Sam MORRIS, Plaintiff-Appellant,

v.

Paul KATZ, Defendant-Respondent.

No. 44374.

Supreme Court of Missouri.

Division No. 1.

May 9, 1955.

Motion for Rehearing or to Transfer to Court en Banc Denied June 13, 1955.

———◆———

Martin A. Rosenberg, Chas. Claflin Allen, St. Louis, for appellant.

Blumenfeld & Abrams, Harold J. Abrams, St. Louis, for respondent.

HOLMAN, Commissioner.

This is a suit upon two promissory notes in the principal amounts of $21,979.50 and $17,262.50, respectively. In each note plaintiff, Sam Morris (appellant), is named as payee, and Paul Katz, defendant-respondent, is the maker. It was admitted that plaintiff was the owner and holder of said notes; that they were executed by defendant; that demand for payment had been made; that only $1,832 principal and $75.71 interest had been paid thereon and that plaintiff had employed an attorney in an effort to collect said notes. The defense was based upon plaintiff's failure to pay a certain life insurance premium under the agreement hereafter set out. Defendant also filed a counterclaim to recover the aforementioned payment made upon one of the notes. A jury-trial resulted in a verdict for defendant upon plaintiff's claim and for plaintiff upon the counterclaim. Plaintiff has appealed.

Plaintiff, a general agent for Union Central Life Insurance Company, solicited the defendant to purchase a life insurance policy. Mr. Katz signed an application in blank and submitted to a physical examination. Plaintiff caused the policy, which was dated July 14, 1952, to be issued in the face amount of $500,000, the annual premium being $34,525. It appears that defendant was a man of considerable means, but at this time he had just completed the purchase of the Dumont Cartage Company for about $200,000 and consequently, when plaintiff sought to deliver the policy, defendant stated he could not pay the first annual premium and was doubtful of his ability to pay the premium for the second and third years. Because of this situation, plaintiff and defendant entered into the following written agreement:

"This Agreement, made and entered into this 1 day of August, 1952, by and between Sam Morris and Paul Katz of St. Louis County, Missouri, Witnesseth:

"Whereas, Morris, as Agent for Union Central Life Insurance Company, wrote insurance policy No. 2072721 on the life of Paul Katz, effective the 14th day of July, 1952, in the sum of $500,000, and

"Whereas, the annual premium on said policy is $34,525 and the said Morris has paid the first annual premium on behalf of Katz:

"Now, Therefore: In consideration of the mutual covenants contained herein, it is agreed:

"1. That Katz has executed and delivered to Morris his promissory note dated August 1, 1952, in the sum of $34,525, as evidence of the indebtedness created by payment by Morris of the aforesaid premium.

"2. In the event Morris either retains or discounts, transfers or negotiates said note, or any other note given by Katz to Morris, pursuant to Clause 5 of this agreement, and Katz has not paid the same, that Morris will either pay said notes at maturity, or cause them to be extended so that Katz will not be compelled to pay the same upon maturity. Should Katz exercise his right to sell and transfer shares of stock to Morris, as provided in Clause 6 hereunder, then Morris shall produce and surrender to Katz for cancellation and payment, any such notes executed by Katz, then outstanding.

"3. That when the annual premiums upon said policy become due for the second

and third years, Morris agrees that should Katz be unable, in his opinion, to pay said premiums, or either of them in whole or in part, that the said Morris will pay said premiums in full, less the cash value of said policy available toward payment of premium, and less any dividends payable by Union Central Life Insurance Company upon said policy.

"4. That Katz shall be indebted to Morris for one-half (½) of such interest charges which Morris may be required to pay in the event he borrows funds from third parties to pay any of the said three (3) insurance premiums.

"5. Katz shall give to Morris his separate promissory notes, payable one year after date, for any further sums advanced by Morris on his behalf, pursuant to Clause 3 of this agreement; provided, however, that Morris shall either pay said notes upon maturity, or cause the same to be extended, in the event that Katz has not paid the same and Morris is either the holder of said notes or has discounted, transferred or negotiated said notes.

"6. At the end of three years from the effective date of said policy, Katz shall, at his option, either pay in full any sums due, if any, upon such amounts advanced by Morris on his behalf, for payment of insurance premiums, or shall then by letter or separate agreement, agree to transfer to Morris, fully paid non-assessable common shares (non-voting) of the capital stock of Dumont Cartage Company, a corporation, in such amount as shall be of equivalent value to such sums as may then be due by Katz to Morris.

"(a) The said shares shall be physically transferred at such time as Katz, under existing agreements with third parties, shall be permitted to effect such transfer.

"(b) Despite the failure of physical transfer of said shares, however, Morris shall, in such event, have all the rights to which he would be entitled as a shareholder.

"(c) Morris agrees to accept such shares in full payment of any and all obligations due him by Katz.

"7. Katz shall have the option to purchase from Morris, within two (2) years from the expiration of the three-year period set forth in Clause 6, all of such shares of Dumont Cartage Company as Katz may have transferred or agreed to have transferred to Morris. The purchase price shall be the value of said shares as appears from the books and records of the said Dumont Cartage Company, but said purchase price shall in no event be less than the actual consideration paid by Morris for said shares.

"In Witness Whereof, the parties have set their hands on the day first above written.

"(Signed) Sam Morris
Paul Katz."

The preceding agreement was prepared by the attorney for defendant. Upon the same date, defendant executed and delivered to plaintiff his note for $34,525. In January, 1953, plaintiff caused his company to issue a policy insuring the life of Robert Gerstein, a key employee of defendant, for $100,000. Defendant agreed to pay the annual premium of $4,717 thereon. Plaintiff advanced this premium and on January 15, 1953, defendant executed the two notes sued upon. One of the notes represented one-half of the amount of the note of August 1, 1952, and the other was for a like amount, plus the premium on the Gerstein policy. Plaintiff says this change was made at the request of defendant who, at that time, had the original $500,000 policy reissued in two separate policies for $250,000 each, with his wife as beneficiary in one and the Dumont Cartage Company as beneficiary in the other. Defendant, according to plaintiff, was to have the Cartage Company pay the note for $21,979.-50 in twelve monthly installments, and he would pay the other note in like manner. This is substantiated by the fact that on February 15, 1953, the Cartage Company paid plaintiff $1,907.71 thereon. Defendant

denied this arrangement and stated that the original note was divided at the suggestion of plaintiff so that it would be easier for him to borrow thereon. He also testified, over plaintiff's objection, that plaintiff agreed that the two notes would be subject to all of the conditions contained in the agreement of August 1, 1952.

Plaintiff had discounted the original note with the St. Louis County National Bank. About January 20, plaintiff and defendant went to the bank and the two notes were delivered to the bank and the original note cancelled and returned to defendant. Each of the parties paid one-half of the interest due thereon. The banker, Mr. Schmidt, testified that defendant agreed to pay each of the notes in twelve monthly installments and that he made pencil notations on the notes to that effect. Since only one payment was made, plaintiff was required by the bank to redeem the notes on May 4, 1953, under his obligations as endorser.

In February, 1953, defendant sold the Dumont Cartage Company. Plaintiff says he promised to pay him in full as soon as the transaction was closed. He did not do so. After the sale of the Cartage Company, defendant had the policy reissued in its original form. About this time, defendant left St. Louis and became connected with a company in Atlanta, Georgia, which was owned by his son.

The notes were due upon demand and if no demand was made, then on January 15, 1954. Plaintiff made formal demand for payment on May 2, 1953, and filed this suit on May 13, 1953. Defendant, on May 22, notified plaintiff that he was unable to pay the notes, and asked that the time of payment thereof be extended under the terms of the agreement of August 1, 1952. At the same time, notice was given that he would be unable to pay the second annual premium upon his insurance policy and plaintiff was requested to pay said premium under the terms of the aforesaid agreement. This request was again made by letter dated July 8, 1953. On July 16, plaintiff replied to these letters, advising defendant that he would not advance this premium

and stating further that the dividend of $3,665 and cash value of $19,000 could be applied in reduction of the premium so that the policy could be kept in force for another year by the payment of less than $12,000. Defendant testified that in July, 1953, he was not financially able to pay the second premium; however, on cross-examination, he reluctantly admitted that he could have paid $12,000.

Plaintiff testified that, in his opinion, defendant had the ability in July, 1953, to have paid the premium for the second year. No one paid this premium and subsequently the policy lapsed.

Upon this appeal, plaintiff contends that the trial court erred in its refusal to direct a verdict for him at the close of the whole case. This assertion is based upon the absence of any evidence that defendant could not have paid the second premium after same was reduced by the dividend and cash value of the policy.

We will assume for the purpose of the consideration of this question that the following contentions of the defendant are correct: (1) That the written agreement of August 1, 1952, was applicable to the notes sued upon herein; (2) that the agreement of plaintiff, under certain circumstances, to pay the second and third annual premiums is an absolute condition of the liability of defendant to pay the notes, and that the violation of said agreement by plaintiff would authorize a verdict for defendant; and (3) that the apparent ambiguity in clause (3) of the contract, as to whose opinion should prevail concerning the ability of the defendant to pay the second and third annual premiums, will be resolved in favor of defendant and it will be assumed that his opinion will be the one that is controlling.

In considering this question, we have concluded that the defendant could not require plaintiff to pay the premium by a mere arbitrary statement that he could not pay it. Defendant seems to have had a contrary view, because he frequently reiterated in his testimony, "I wasn't ob-

ligated to pay it," and "Why should I know how much *he* was to pay." (Emphasis ours.) It seems apparent that defendant did not consider that there was any duty upon him to determine his ability to pay the premium or the amount that would be required. In this connection, we observe that it would seem obvious that the amount to be considered in determining the ability of the defendant to pay the second annual premium would be the minimum payment required in order to keep the policy in force for another year, $11,860.

The object of the agreement in question was to keep the insurance in force for a limited period (not exceeding three years) during which defendant contemplated that he might need all of his available funds elsewhere. The reason for this situation was that he had just purchased the Dumont Cartage Company for $200,000, and in addition, it appears that this company was quite run down and needed a considerable amount expended thereon in rehabilitation. Perhaps we should observe that this condition was completely changed and, in fact, eliminated, when the defendant sold this company in February, 1953.

We are of the view that the "opinion" of defendant, as contemplated by the contract, that he was unable to pay the second premium, must have been an honest opinion based, at least to some reasonable extent, upon his actual financial condition at the time.

■ At one point in his testimony, defendant did state that he failed to pay the second premium because he didn't have the money. Immediately thereafter, however, he stated that he presumed that the amount required would be $34,000 and denied any knowledge that the policy could have been kept in force by the payment of about $12,000. Thereafter, he reluctantly admitted that he could have paid $12,000 between July 14 and August 14, 1953, but he didn't think he could have paid $34,000. Of course, it is obvious that if plaintiff could have paid the $12,000 he could not have had an honest opinion that he was unable to pay it. Also, it is significant that at no time did defendant testify that he had entertained an opinion that he was unable to pay the premium in the reduced amount of $11,860. The burden was upon the defendant to prove this fact as it was an essential element of his defense.

When we consider that defendant not only failed to affirmatively prove this issue, but, on the contrary, admitted that he could have paid this reduced amount, it follows that no issue remained for the jury to determine in relation to the defense.

■ Since all of the essential elements of plaintiff's case were admitted and defendant failed to make a submissible case upon his defense, the trial court should have directed a verdict for plaintiff upon his claim. Latta v. Robinson Erection Co., 363 Mo. 47, 248 S.W.2d 569.

The cause is reversed and remanded with directions to the trial court to set aside the verdict and judgment for defendant upon plaintiff's petition and to enter a judgment for plaintiff for the amount due upon said notes, including attorney fees, all of which is in accordance with plaintiff's motion for a directed verdict at the close of all of the evidence and with his after-trial motion for judgment, notwithstanding the verdict in favor of the defendant.

VAN OSDOL and COIL, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.